RECEIVED

MAR 2 9 2017

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### ALEXANDRIA DIVISION

| | |
|---|---|
| KENNETH B. GAINES | DOCKET NO.: 1:13-cv-00576 |
| VERSUS | |
| | JUDGE DEE D. DRELL |
| TECHLINE, INC. | MAG. JUDGE PEREZ-MONTES |

## MEMORANDUM RULING

Before the court is a motion for summary judgment (Doc. 86) filed by defendant, Techline, Inc. in which it seeks dismissal of all claims against it in the above captioned matter. For the reasons expressed below, the court finds the defendants' motion should be **GRANTED**.

### Facts

Plaintiff, Kenneth B. Gaines, filed suit against his (then) employer, Techline, Inc. on March 20, 2013, alleging employment discrimination and federal wage loss. (Doc. 1). According to the complaint, Gaines began working as a driver for Techline in March 2007, and from the outset of his employment, was subjected to a racially hostile working environment by a white warehouse manager and a fellow white driver. The warehouse manager, Leo Ladner ("Ladner"), called him "nigger", told him "you niggers all want something for nothing", threatened him with injury and denied him overtime assignments; while a fellow white driver, J.W. McKee ("McKee") called him "colored". Further, despite its knowledge of the hostile work environment, Techline failed to take prompt and effective remedial action to stop the racially discriminatory practices. Gaines further alleges Techline paid him significantly less than it paid McKee and paid Gaines the same as a white warehouse worker by the name of Lance Melder ("Melder").

On August 26, 2015, Gaines filed an amended complaint incorporating the aforementioned facts and claims and asserting new factual allegations and claims for "retaliation and

discrimination" and "violation of the American Disability Act [sic]." (Doc. 63, p.2).  Gaines says Techline terminated him on July 2, 2014 in retaliation for filing this suit in 2013 and for requesting medical leave "due to the death of his mother" in June 2014.  (Doc. 63).  No other factual allegations were asserted therein.

Techline filed the instant Motion for Summary Judgment on April 15, 2016 arguing Gaines' claims should be denied as he cannot establish *prima facie* cases of discrimination, harassment or retaliation.  The motion also urges that Gaines' claim for overtime under the Fair Labor Standards Act ("FLSA") was time barred. (Doc. 86).  Attached thereto was a statement of uncontested material facts with 112 factual assertions.  (Doc. 86-2).  Gaines filed an opposition on May 6, 2016 (Doc. 94) restating allegations contained in his various complaints and noting parts of his deposition testimony.  Also filed on that date was "Plaintiff's Statement of Contested Facts" (Doc. 93) which set forth the following:

    (1) Plaintiff was called racial epithets while employed by Defendant, including "colored boy," and "you niggers all want something for nothing".

    (2) Plaintiff's supervisor falsified his time records whenever the supervisor was made at him in an effort to divert overtime away from Plaintiff for racially discriminatory motives.

    (3) J.W. McKee, a white driver, was paid more for the same work [as] Plaintiff. Lance [Melder] was paid the same as Plaintiff, even though he was a warehouse worker and not a driver.

    (4) Plaintiff was terminated by Defendant for filing an EEOC complaint and requesting medical leave following the death of his mother.

    (5) Although Plaintiff reported the discriminatory acts, Defendant did not take prompt remedial action.

    (6) Plaintiff suffered from post-traumatic stress syndrome (PTSD).

    (7) Defendant was aware of Plaintiff's condition.

    (8) Other employees harassed Plaintiff over his condition.

2

(9)  Defendant knew of this harassment.

Applicable Standard

Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anders on v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  We consider "all evidence in the light most favorable to the party resisting the motion."  Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 680 (5th Cir.2011)(internal citations omitted).  It is important to note that the standard for summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law.

The movant has the burden of pointing to evidence proving there is no genuine dispute as to any material fact, or the absence of evidence supporting the nonmoving party's case.  The burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of his claim.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  The nonmoving party must establish the existence of a genuine dispute of material fact for trial by showing the evidence, when viewed in the light most favorable to him, is sufficient to enable a reasonable jury to render a verdict in his favor.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Duffy v. Leading Edge Products, Inc., 44 F.3d 308, 312 (5th Cir.1995).  A party whose claims are challenged by a motion for summary judgment may not rest on the allegations of the complaint and must articulate specific factual allegations which meet his burden of proof.  Id.  "Conclusory allegations

unsupported by concrete and particular facts will not prevent an award of summary judgment." Duffy, 44 F.2d at 312, citing Anderson v Liberty Lobby, 477 U.S. at 247.

Evaluation of State Law Claims

 Gaines' claims are asserted pursuant to federal and state employment law statutes[1]. The court's analysis of the claims is the same regardless of which statute is applied as Louisiana courts look to the federal standards when evaluating employment claims.  Motton v. Lockheed Martin Corp., 900 So.2d 901, 909 (La.Ct.App), writ denied, 904 So.2d 704 (2005) citing, Bustamento v. Tucker, 607 So.2d 532, 538 n.6 (La.1992); King v. Phelps Dunbar, LLP, 743 So.2d 181, 187 (La. 1999). See also Mc Coy v. City of Shreveport, 492 F.3d 551, 556 n.4 (5th Cir.2007).    For the sake of simplicity, we apply and reference the federal standards in evaluating Gaines' employment law claims.

Law and Analysis

Race Discrimination

 Techline asserts Gaines cannot establish a *prima facie* case of race discrimination, and even if he could, he cannot establish by a preponderance of the evidence that the reason for his termination was pretextual.

 Under the McDonnell Douglas v. Green, 411 U.S. 792 (1973) burden shifting framework, the plaintiff must first establish a *prima facie* case that creates the inference of discrimination.  Id. at 802.  If accomplished, the burden shifts to the defendant to produce evidence establishing the adverse employment action was taken for a legitimate, non-discriminatory reason.  Id.  Assuming

---

[1] Section 23:332(A) provides in relevant part: It shall be unlawful discrimination in employment for an employer to engage in any of the following practices: (1) intentionally fail or refuse to hire or to discharge any individual, or otherwise intentionally discriminate against any individual with respect to his compensation, or his terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, or national origin; (2) intentionally limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect the individual's status as an employee, because of the individual's race, color, religions, sex, or national origin...

such a showing is made, the burden returns to the plaintiff to establish, by a preponderance of the evidence either: (1) the defendant's reason is not its true reasons, but is a pretext for intentional discrimination, or (2) while the reason may be true it is but one of the reasons for his/her conduct, another of which is discrimination.  Id. at 804-05; Reeves v. Anderson, 530 U.S. 133 (2000); Machinchick v. PB Power, Inc., 398 F.3d 345, 352 (5th Cir.2005), Keelan v. Majesco Software, Inc., 407 F.3d 332, 341 (5th Cir.2005).  This second showing, known as the "mixed-motive framework", is not part of the traditional McDonnell-Douglas framework but is employed by the Fifth Circuit in an identical manner.

Techline concedes Gaines is able to establish the first two elements of race discrimination in that he was: (1) a member of a protected class and (2) qualified for the position at issue; however, he cannot establish he: (3) suffered an adverse employment action by his employer and/or (4) was treated less favorably than other similarly situated employees outside of the protected group under nearly identical circumstances.  See Grimes v. Texas Dept. of Mental Health, 102 F.3d 137, 140 (5th Cir.1996); Okoye v. University of Texas Houston Health Science Center, 245 F.3d 507, 512-13 (5th Cir.2001).   In response, Gaines contends he suffered adverse employment actions because Ladner diverted Gaines' overtime pay by altering his timesheets with whiteout and because Techline terminated him on July 2, 2015.  We agree that Gaines' suffered an adverse employment action; therefore, the only remaining question is whether Gaines established he was treated less favorably than similarly situated white employees.

Gaines' asserts: (1) he was paid significantly less than similarly situated white drivers, (2) he was forced to work in the warehouse despite the fact he was hired as a driver; (3) he was assigned "unfair routes", (4) he was assigned the small truck that had defective air conditioning; (5) he was not allowed to drive the work truck home; (6) the Warehouse Supervisor called

customer to determine Gaines' location; (7) the Warehouse Supervisor limited and/or altered Gaines' overtime hours; and, (8) he was terminated.  However, Gaines fails to support any one of these assertions with anything more than his own, self-serving, unsubstantiated, statements.

In support of his disparate pay claim, Gaines says Melder, a warehouse worker, told him they earned the same wage, and his first attorney, Pamela Jones, told him McKee, his fellow driver, earned a higher hourly wage.  Gaines further claims he could have verified McKee's pay if he wanted to because McKee frequently left his paycheck stubs in plain view.  (Doc. 86-3, p.62-64).  However, no affidavits, paystubs or statements regarding the difference in the actual wages were produced in connection to this motion, and Gaines fails to establish that Melder is a "similarly situated" employee.  Techline accurately argues the deposition testimony of Gaines, McKee and Pharr establish there was no disparity in pay between McKee and Gaines.  Likewise, Techline's H.R. Manager, Michelle Ramos, found no evidence any pay discrepancies when she investigated Gaines' claim.

Gaines' other assertions of disparate treatment in the workplace are undermined by his own deposition testimony on many contested points.  He acknowledges McKee drove the smaller truck on occasion (Doc. 86-3, p. 78, 81); Pharr attempted to have the air conditioning repaired in the truck each time Gaines complained about it (Id. at 82); Gaines had no knowledge of the routes McKee was assigned; he did not have proof McKee was not required to work in the warehouse; and, when Gaines did report errors on his time sheets[2], Pharr looked into the matter.   (Id.)  Accordingly, by his own admission, he acknowledges he was not treated differently that his fellow driver who was white.  Further, there is nothing to indicate that Gaines job description was any

---

[2] There were occasions when Gaines did not choose to tell Pharr about the errors on his timesheets.

different than McKee's.  Accordingly, we do not find that Gaines has established a *prima facie* case of employment discrimination based on race.

Even if Gaines had established a *prima facie* case, he cannot establish by a preponderance of the evidence that Techline's legitimate, non-discriminatory reason for termination was pretextual.  Techline actually terminated Gaines after it received a third reckless driving complaint on Gaines in a matter of six months.  (Doc. 86-1,p. 15).  As evidenced by Pharr's sworn declaration and accompanying notes taken on July 2, 2014, Pharr explained to Gaines that he was being terminated because Pharr had lost confidence in Gaines' driving ability.  (Doc. 86-8).

Gaines denies the reckless driving incidents ever happened and complains he was never allowed the opportunity to address the inaccuracy of the third reckless driving complaint.  He also denies any violation of Techline's driving policy because he did not receive a single citation for reckless driving.  These allegations, taken as true, do not establish the burden of proof necessary to prove Techline's reason for terminating Gaines was pretextual.

Hostile Work Environment Based on Race

Gaines further contends Techline was a workplace permeated with racially discriminatory ridicule and insults so severe or pervasive that it created a hostile work environment.  Specifically, he alleges Ladner routinely called him "shithead", "asshole" and "nigger" and stated on one occasion "[y]ou niggers all want something for nothing.  He says Ladner also threatened to injure Gaines, altered his overtime wages, provided inequitable work assignments, and prevented him from working overtime.  Gaines further alleges McKee contributed to the hostile work environment by saying "colored boy, you go to DeRidder when I ain't here", "better shut the mf up and get the mf out of here", and "bullshit" frequently.

To establish a hostile work environment claim under Title VII Gaines must provide proof: (1) he was a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition or privilege of employment; and, (because neither Ladner nor McKee were Gaines' supervisor[3]), he must also prove (5) the employer knew or should have known of the harassment and failed to take remedial action.  Watts v. Kroger Co., 170 F.3d 505, 509 (5th Cir.1999) (citations omitted), Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir.2002).

For harassment to affect a term, condition or privilege of employment, both the victim and a reasonable person must find it to be an environment that is hostile or abusive.  Lauderdale v. Texas Dept. of Criminal Justice, Inv. Div., 512 F.3d 157, 163 (5th Cir.2007).  A regular pattern of frequent verbal ridicule or insults sustained over time can constitute severe or pervasive harassment.  Walker v. Thompson, 214 F.3d 615, 626 (5th Cir.2000).  Simple teasing, offhand comments, and isolated incidents, unless extremely serious, are insufficient to affect the terms, conditions or privileges of employment.  Lauderdale, 214 F.3d at 626.

When questioned during his deposition about the "routine" derogatory statements made by Ladner and McKee, Gaines testified that each made a racially charged statement only once and he did not report McKee's use of a racial epithet to Pharr.  Gaines also acknowledges in his deposition that the cursing by Ladner and McKee and Ladner's actions of assigning Gaines unfair routes, telling him he could look for another job if he didn't like the routes, almost hitting Gaines with a forklift and a slammed door are not racially "discriminatory per se".  Thus, his contention that "they are indicative of a racially-hostile work environment directed to Plaintiff personally" cannot stand.  There is simply no inference to be made and no evidence supporting a conclusion that these

---

[3] Gaines acknowledged the fact neither Ladner nor McKee were his supervisors.  (Doc. 86-3, p.19, 20 and 22).

acts, alone or in combination, are racially motivated.  His subjective belief without the necessary factual support are not enough to establish a hostile work environment based on race.

Disability

Techline argues Gaines cannot establish claims for disability discrimination, hostile work environment based on disability, retaliation based on disability and/or failure to accommodate his disability because he cannot establish he was disabled.  Gaines counters by claiming he suffers from Post Traumatic Stress Disorder ("PTSD") and depression which was diagnosed by his therapist at the V.A. Hospital.  In support, Gaines notes his therapist provides treatment for his PTSD and medication for his depression.  No other factual information or evidentiary support are offered to support his claim he is disabled.

"[T]he ADA makes it unlawful for an employer to discriminate against 'a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'"  Rodriguez v. ConAgra Grocery Prods. Co., 436 F.3d 468, 474 (5th Cir.2006), quoting, 42 U.S.C. §12112(a).  "The term 'disability' under the ADA means: '(A) a physical impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'"  Cutera v. Board of Sup'rs of Louisiana State University, 429 F.3d 108, 110-11 (5th Cir.2005), quoting 42 U.S.C. §12102(2).  Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. §1630.2(i).

Gaines' diagnoses of PTSD and the depression, regardless of treatment, do not constitute a disability.  By Gaines' own admission, he was not substantially limited in any major life

activities, and there is nothing to indicate that he was regarded by anyone at Techline as being disabled.  Gaines' inability to establish a disability is fatal to all of his claims for discrimination, harassment and retaliation based on disability.

Retaliation

Gaines asserts he was retaliated against for filing a charge with the Equal Employment Opportunity Commission ("EEOC"), the instant lawsuit and for seeking medical leave because of his disability.  Gaines has no direct evidence of retaliation; thus, we again look to the McDonnell Douglas burden shifting framework to evaluate the claim.  To establish a *prima facie* case, Gaines must establish: (1) he participated in an activity protected by Title VII; (2) his employer took and adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment.  Harvill v. Westward Commc'ns, LLC, 433 F.3d 428, 439 (5th Cir.2005).

Gaines' request for medical leave had nothing to do with his termination.  First, there is no showing that Gaines was disabled and entitled to medical leave under the FMLA.  Second, he fails to establish he actually made a request to Pharr for leave under the Family Medical Leave Act.  His own testimony was that he asked for time off but did not fully explain it was needed because of his PTSD and/or depression.

Gaines claims of retaliation for filing an EEOC charge and/or this lawsuit also fail as he cannot establish the temporal component.  Where, as here, the only evidence in support of a causal connection is temporal proximity, the time between the protected activity and the adverse employment action must be "very close."  Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-274 (2001) (*per* curium).  The Fifth Circuit case law, "although largely unpublished, 'fits with the Supreme Court's requirement that the temporal proximity be "very close" to show causation," as

do "previous decisions that a 'four-month gap in time, standing alone, is insufficient to establish *prima facie* evidence of causation." Flanner v. Chase Inv. Services Corp., 600 Fed.Appx. 914, 922 (5th Cir.2015) (unpublished).[4]  Gaines filed his first complaint with the EEOC on March 16, 2011[5] and this lawsuit on March 20, 2013.  Techline terminated Gaines on July 2, 2014, so more than three years lapsed between the filing of Gaines' EEOC charge and his termination, and fifteen months between the filing of this lawsuit and his termination.  Gaines' acts of engaging in protected activities significantly predate his termination and cannot be considered "very close".

Fair Labor Standards Act

Finally, Techline asserts that this claim is time barred.  The statute of limitations within which an employee must file suit under the Fair Labor Standards Act is two year from the time of the violation or three years if the violation is willful.  29 U.S.C. §255(a).  Gaines alleges, in conclusory fashion, that Ladner intentionally altered Gaines' handwritten timesheets by applying whiteout; all in an effort to prevent him from receiving overtime pay.  Techline acknowledges that Pharr investigated and amended timesheets for employees, including Gaines, but argues Ladner could not have altered anyone's time after March 15, 2010.  It was then that Techline implemented the use of an electronic system for timekeeping; therefore, there were no timesheets for Ladner to alter with whiteout after that date.  Gaines' filed suit on March 20, 2013, five days after the statute of limitations ran on any potential FLSA claims.  As more than three years passed before suit was filed, Gaines' FLSA claims are time barred.

---

[4] The Court cites in support: Barkley v. Singing River Elec. Power Ass'n, 433 Fed.Appx. 254, 260 (5th Cir.2011) (unpublished) (citing Ajao v. Bed Bath & Beyond, Inc., 265 Fed.Appx. 258, 256 (5th Cir.2008) (*per curiam*)(finding temporal proximity of four months "not close enough"); Myers v. Crestone Int'l, LLC, 121 Fed.Appx. 25, 28 (5th Cir.2005) ( *per curiam*) (three month gap did not, by itself, create a causal link); Raggs v. Miss. Power & Light Co., 278 F.3d 436, 471-72 (5th Cir.2002) (five month lapse, same)).  See also Everett v. Cent. Mississippi, Inc. Head Start Program, 444 Fed.Appx. 38, 47 (5th Cir.2011) (unpublished) (finding temporal proximity of five months not close enough).
[5] Gaines filed a second EEOC charge after he was terminated.

Even if the statute of limitations had not run, Gaines fails to provide any evidence in support of his claims of inaccurate time keeping.  Gaines' deposition statement that the alterations were done "whenever Steve got mad" and his assertion in his opposition that he gave copies of the altered timesheets to the EEOC with his complaint are wholly unsupported and do not constitute competent summary judgment evidence.  Without such, Gaines cannot survive a motion for summary judgment.


Conclusion

As Mr. Gaines has failed to establish any of the asserted claims, we find Techline's motion for summary judgment should be granted.  The court will issue a judgment in conformity with these findings.

Alexandria, Louisiana
March 29th, 2017

**DEE D. DRELL, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**